UNITED STATES of America,
Plaintiff–Appellee,

v.

George ARCH, Defendant–Appellant.

No. 92–2946.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 22, 1993.

Decided Oct. 20, 1993.

Donna Eide, Steven D. DeBrota (argued), Office of the U.S. Atty., Indianapolis, IN, for plaintiff-appellee.

Jack F. Crawford, Indianapolis, IN (argued), for defendant-appellant.

ROVNER, Circuit Judge.

A jury convicted George Arch of possessing with the intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1). On appeal, Arch challenges the district court's denial of his pretrial motion to suppress. We affirm.

## I. FACTS

The facts relevant to the suppression motion are not in dispute. On the afternoon of February 9, 1992, Arch checked into a Dollar Inn motel in Indianapolis, Indiana, under an assumed name. That evening, Arch complained to the front desk that he was unable to get into his room. Janie Rilenge, the night manager, learned from a co-worker that Arch already had complained several times about the door and that he had also reported drilling noises in his room. Rilenge accompanied Arch to his second-floor room and verified that his key did not unlock the door. Because the motel had no other key, Arch called a locksmith and eventually gained access to the room.

Security officer Harry Kern stopped by the motel on routine patrol a short time later. Kern had been trained as a special deputy by the Marion County Sheriff's Department ("MCSD") but worked for a private security firm. Rilenge asked Kern to check on Arch, explaining that he was acting strangely and making her nervous. Kern went to Arch's room and knocked on the door. When Arch cracked open the door, he had a knife in his hand, which he put down at Kern's request. After Kern identified himself as a special deputy, Arch opened the door a bit further, enabling Kern to step into the doorway and look around the room. Kern noticed that an overturned chair was blocking the door, that items were strewn across the floor, and that the beds were torn apart. He also saw a bloody rag and two syringes on the floor. From the doorway, however, Kern could not see into the bathroom or between the beds.

When Kern inquired about the syringes, Arch replied that he was a diabetic and took insulin. Kern asked to see an insulin bottle, but Arch had none. Kern then asked permission to enter but Arch refused, yelling that Kern had no right to come in to his room. Arch then lifted the 320–pound officer out of the doorway, pushed him to the balcony railing outside, and retreated into his room, slamming the door behind him.

Kern decided to arrest Arch for battery and returned to the motel lobby to call for assistance, certain that he would not be able to restrain Arch alone. Arch followed Kern to the lobby, telling Kern that he wanted to call his lawyer. While Kern waited for backup, Arch phoned directory assistance and purchased a soda from the vending machine. MCSD officers arrived shortly and helped

Kern arrest Arch. Kern testified that when he attempted to handcuff Arch, Arch "just went wild" and demanded repeatedly that the officers not go into his room.

Kern estimated that it took five minutes to control and handcuff Arch. Rilenge, who observed the scuffle, added that it took three to four officers to subdue Arch, whose demeanor she described as "crazy" and "very irate." She also recalled that Kern had removed two knives from Arch's pocket before attempting to handcuff him. Carey Buckner, an MCSD road deputy who arrived at the motel in the midst of the arrest, estimated that it took five officers eighteen minutes to place Arch in handcuffs.[1]

Once handcuffed, Arch was taken outside and placed in an MCSD van. After Buckner returned to the lobby and was treated for a small cut on his hand, Kern asked some of the officers to accompany him to Arch's room. Kern thought there might be an injured person inside given Arch's demeanor, the condition of the room, and the bloody rag on the floor. Buckner and another deputy went with Kern but found Arch's room locked. Buckner could see through the window that there was an empty syringe on the floor. When they returned to the lobby, the officers found that Arch had left his room key on top of the vending machine. Buckner and a second deputy took the key and unlocked the door to Arch's room.[2]

The deputies entered the room with their weapons drawn and searched the room from front to back, looking beside the bed and elsewhere for any sign of an injured person. The officers did not open any drawers or suitcases, but when they reached the bathroom, they observed a partially open suitcase standing upright on the bathroom floor. A package on top of the case had been torn open to reveal a white powdery substance that was later determined to be cocaine. Without touching the case, the officers could see similar packages inside. Finding no one

in the bathroom, they retreated from Arch's room without touching the packages and immediately called their supervisor.

A narcotics detective later arrived and took over the investigation. He opened the suitcase and found twelve one-kilogram packages of cocaine in addition to the one found on top of the case. Arch was subsequently charged under 21 U.S.C. § 841(a)(1) with knowingly and intentionally possessing more than five kilograms of cocaine with the intent to distribute. Before trial, Arch moved to suppress the cocaine, contending that the packages had been seized in violation of the Fourth Amendment. The district court denied the motion after an evidentiary hearing. A jury subsequently convicted Arch at the conclusion of a one-day trial.

## II. ANALYSIS

We review the denial of a motion to suppress for clear error. *United States v. Rice*, 995 F.2d 719, 722 (7th Cir.1993) (collecting cases). Because the resolution of such a motion is typically fact-dependent, we must "give particular deference to the district court that had the opportunity to hear the testimony and observe the demeanor of the witnesses." *United States v. Edwards*, 898 F.2d 1273, 1276 (7th Cir.1990) (citations omitted).

Motel guests enjoy the same constitutional protection against unreasonable searches and seizures as do the occupants of a private residence. *United States v. Napue*, 834 F.2d 1311, 1326 (7th Cir.1987); *see also United States v. Rivera*, 825 F.2d 152, 156 (7th Cir.), *cert. denied*, 484 U.S. 979, 108 S.Ct. 494, 98 L.Ed.2d 492 (1987). Because the deputies entered Arch's room without a warrant, we presume that the search of the room was unreasonable, and the government bears the burden of demonstrating that it fits within an exception to the warrant requirement. *Id.* Citing the officers' concern over

---

1. The district court implicitly rejected Buckner's lengthier estimate of the time it took to handcuff Arch when it found that no more than eight to twelve minutes elapsed between Kern's initial encounter with Arch and the post-arrest sweep of his room. Suppression Tr. at 63.

2. Buckner testified that he was prepared kick in the door if necessary, given the possibility that there might be someone in the room needing medical assistance. That proved unnecessary, however.

the possible presence of an injured person in the room, the government contends that the warrantless entry and search was justified by the protective sweep doctrine. The district court agreed, relying on *Maryland v. Buie,* 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990).

■ In *Buie,* the Supreme Court recognized an exception to the warrant requirement for a protective sweep accompanying an in-home arrest. The Court held that when the police arrest an individual at his home, they may conduct a limited search of the premises without a warrant and without probable cause if there are "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* at 334, 110 S.Ct. at 1098. This protective sweep doctrine derives from *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which authorized a limited, pat-down search of an individual's outer clothing during a street encounter where specific, articulable facts would lead a reasonable law enforcement officer to believe that the individual might be armed and dangerous. *Buie,* 494 U.S. at 331–34, 110 S.Ct. at 1096–98. *Buie* permits a similarly narrow search at the scene of an in-home arrest:

> [A] protective sweep, aimed at protecting the arresting officers, if justified by the circumstances, is nevertheless not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found. The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises.

*Id.* at 335–36, 110 S.Ct. at 1099 (footnote omitted); *see also id.* at 327, 110 S.Ct. at 1094. At the same time, the investigating officer need not close his eyes to what he sees during the sweep, and any contraband that he observes in plain view may lawfully be seized. *Id.* at 330, 110 S.Ct. at 1096 (citing *Arizona v. Hicks,* 480 U.S. 321, 326, 107 S.Ct. 1149, 1153, 94 L.Ed.2d 347 (1987));

*see also United States v. Richards,* 937 F.2d 1287, 1292 (7th Cir.1991).

Whether *Buie* extends to searches for potentially injured individuals is a question of first impression. Arch opposes such an extension of *Buie,* contending that permission to sweep a home or motel room for injured persons "is too broad a license to extend to government personnel who can ... 'arrest' as well as aid." Arch Br. at 11. Yet, the propriety of a warrantless entry in this circumstance has already been recognized. As the Supreme Court noted in *Mincey v. Arizona,* 437 U.S. 385, 392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978), "[w]e do not question the right of the police to respond to emergency situations. Numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid." (Footnotes omitted.) Indeed, we recently found a warrantless entry into a home to search for a dead or injured person valid under the "exigent circumstances" exception to the warrant requirement. *United States v. Salava,* 978 F.2d 320, 324–25 (7th Cir.1992). The question before us is therefore not whether police may enter a motel room or home without a warrant to look for injured persons, but under what exception to the Fourth Amendment.

Because we find the limited search of Arch's motel room to be lawful under the exigent circumstances analysis we applied in *Salava,* we find it unnecessary to decide whether the search also would be valid under *Buie.* In our view, however, the fact that Arch was arrested in the motel lobby rather than his room counsels against a hasty resort to *Buie* to justify the search. *Buie* assumes that the police already are lawfully present in the home to arrest its occupant and that a sweep is necessary to avert any immediate danger posed by others on the premises. 494 U.S. at 327, 333, 336, 110 S.Ct. at 1094, 1097-98, 1099. Even cases that countenance protective sweeps when an arrest is made just outside the home do so on the theory that the officers are as much at risk from an unexpected assault on the defendant's doorstep as they might be inside the home. *See*

*United States v. Hoyos,* 892 F.2d 1387, 1397 (9th Cir.1989), *cert. denied,* 498 U.S. 825, 111 S.Ct. 80, 112 L.Ed.2d 52 (1990); *see also United States v. Oguns,* 921 F.2d 442, 446–47 (2d Cir.1990); *United States v. Delgado,* 903 F.2d 1495, 1502 (11th Cir.1990), *cert. den.* 498 U.S. 1028, 111 S.Ct. 681, 112 L.Ed.2d 673 (1991); *United States v. Sheikh,* 654 F.2d 1057, 1071 (5th Cir.1981), *cert. denied,* 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 852 (1983), *overruled on other grounds by United States v. Zuniga–Salinas,* 952 F.2d 876 (5th Cir.1992) (en banc); *United States v. Robinson,* 775 F.Supp. 231, 232, 235 (N.D.Ill.1991). By contrast, Arch was arrested in the first-floor lobby of the motel, far from his second-floor room; the ensuing search of his room was consequently not a search of the immediate arrest site as *Buie* envisions. We therefore deem it prudent to evaluate the validity of the entry and search of Arch's room under the exigent circumstances doctrine rather than the protective sweep doctrine of *Buie.*

 As we explained in *Salava,* "[t]he exigent circumstances doctrine provides that a 'warrantless entry by criminal law enforcement officials may be legal when there is a compelling need for official action and no time to secure a warrant.'" *Salava,* 978 F.2d at 324 (quoting *Michigan v. Tyler,* 436 U.S. 499, 509, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978)). *Salava* indicates that exigent circumstances may exist when the police have an objective and reasonable fear that there is someone within a dwelling needing immediate aid. 978 F.2d at 324; *see also United States v. Hughes,* 993 F.2d 1313, 1315 (7th Cir.1993). An officer's subjective belief that an injured person might be inside does not justify a warrantless entry, however. *See Rivera,* 825 F.2d at 156. Instead, the government must establish that the circum-

stances as they appeared at the moment of entry would lead a reasonable, experienced law enforcement officer to believe that someone inside the house, apartment, or hotel room required immediate assistance. *Salava,* 978 F.2d at 324; *see also Napue,* 834 F.2d at 1326; *Rivera,* 825 F.2d at 156. Once the government clears that hurdle, it must also demonstrate that "[t]he ensuing search ... was appropriately limited to the circumstances that justified it." *Salava,* 978 F.2d at 325.[3]

Arch does not challenge the scope of the search, and the record amply supports the district court's conclusion that it was appropriately limited to those places where an injured person might have been found. The evidence indicates that the officers did not "dawdle in each room looking for clues," *Richards,* 937 F.2d at 1292, but proceeded quickly through the motel room and adjoining bathroom, leaving once they had determined that no one was present. *See id.; Salava,* 978 F.2d at 325. Arch also does not contest the seizure of the cocaine-laden suitcase under the plain view doctrine.[4] The only remaining question is whether the officers had a reasonable basis for entering the motel room.

We agree with the district court that Kern and the other deputies reasonably believed that an injured person might be in Arch's room. The evidence at the suppression hearing revealed that Arch's behavior was irrational, agitated, and bizarre. Arch answered Kern's knock with a knife in hand; and Kern later found two knives in Arch's pocket. Kern also observed a room in disarray, with furniture overturned, beds torn apart, and the floor littered with syringes and a bloody rag. Finally, Arch displayed a violent streak

---

3. We note that the exigent circumstances analysis we have just outlined is similar to *Buie's* protective sweep analysis, which likewise inquires whether the search was justified by a reasonable belief that another person might be hidden from view and whether the search was appropriately limited to places where someone might be hiding. 494 U.S. at 334–36, 110 S.Ct. at 1098–99. We also emphasize that our analysis, like *Buie's,* does not permit the police to enter someone's home or hotel room without a warrant based solely on an inchoate hunch that an injured person might be present, *id.* at 334–35

& n. 2, 110 S.Ct. at 1098 & n. 2; there must instead be concrete facts rendering it reasonable to believe that someone inside needs medical attention. 978 F.2d at 324.

4. The record of the suppression hearing is devoid of details regarding the narcotics detective's subsequent entry into Arch's room and his seizure of the cocaine. However, Arch raised no objection below to the propriety of this second entry nor, as we have noted, to the seizure of the cocaine.

when he refused Kern's request to enter the room and resisted the officers' subsequent efforts to handcuff him. A reasonable officer could have concluded that Kern had interrupted a struggle of some kind and that Arch may have left an injured person in his room. Granted, these officers had not received a tip that Arch had injured someone as the officers did in *Salava;* nor did they have information confirming that anyone else had been in the room. The deputies' first-hand observation of Arch's behavior as well as the condition and contents of his room nonetheless made it reasonable for them to believe that there might be someone else present who needed medical attention.

Like the district court, we discern nothing in the speed or character of the deputies' conduct that would belie their avowed purpose of looking for an injured person. True, the officers did not immediately search Arch's room despite the concern that Kern's first look purportedly aroused. But we can readily understand that a reasonable officer in Kern's position, having been bodily removed from the doorway of Arch's room, would wait for help before proceeding further. Moreover, given the number of officers required to subdue Arch, it is not surprising that Kern's attention returned to Arch's room only after Arch had been taken into custody. Arch notes that even then, Buckner took the time to have his hand treated and that no one ever called an ambulance. Yet, the district court estimated that no more than eight to twelve minutes had elapsed between Kern's first knock and the search of the motel room following Arch's arrest. Suppression Tr. at 63. Thus, as the district court found, events unfolded quickly and in a chaotic manner. *Id.* In this context, any delay or omission in the deputies' efforts to assist a potentially injured person is understandable and did not defeat the exigency that permitted warrantless entry into the room. *Cf. Salava,* 978 F.2d at 324 (precautionary measures that delayed entry for over an hour did not nullify the exigency) (citing *United States v. Jones,* 635 F.2d 1357, 1362 (8th Cir.1980)).

## III. CONCLUSION

The district court did not err in denying the motion to suppress. The warrantless entry into Arch's motel room was justified on the basis of exigent circumstances. We leave for another day the question of whether a comparable search might be justified as a protective sweep under *Maryland v. Buie.*

AFFIRMED.