In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-4114

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JAMES EARL JENKINS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:02CR00080-001—**Larry J. McKinney**, *Chief Judge.*

ARGUED APRIL 22, 2003—DECIDED MAY 15, 2003

Before COFFEY, RIPPLE, and EVANS, *Circuit Judges.*

COFFEY, *Circuit Judge.* Responding to a 911 emergency call of an assault, a police officer entered the home of James Jenkins and found a sawed-off shotgun. Jenkins was charged with possession of a firearm and ammunition by a felon, 18 U.S.C. § 922(g)(1), as well as possession of an unregistered firearm, 26 U.S.C. § 5861(a). Jenkins moved to suppress the shotgun, arguing that the officer illegally entered his home without a warrant. The district court denied the motion, and Jenkins pleaded guilty to possession of a firearm by a felon. He reserved his right to challenge on appeal the denial of his motion to suppress. We affirm.

At approximately 1:47 a.m., an Indianapolis police dispatcher received a 911 telephone call from a woman who identified herself as Rhonda Barnett. Barnett reported an assault in her home on a man named James Jenkins, but she was unclear regarding whether the assault was in progress. The dispatcher directed officer Michelle Tomey to the address from which the call originated and told Officer Tomey that Barnett was "irate and hysterical" and that Barnett had hung up the telephone before the dispatcher could receive more information.

Because Barnett was vague regarding the status of the assault, Officer Tomey treated the situation as an assault in progress. Officer Tomey, who was alone, arrived at the address a few minutes later. Another officer had also been dispatched to the address, but Officer Tomey did not wait for that officer to arrive before approaching the residence. When Officer Tomey reached the front door she noticed that it was open approximately eight inches. She also heard a noise coming from inside, which she described as sounding "like a person standing up and falling down." She knocked on the door and announced herself as a police officer. She received no response and again knocked and announced her presence. When no one answered, Officer Tomey pushed open the door.

Officer Tomey then saw a man (later identified as DeQuincy Hazelwood) in the house walking towards her. His mouth was bleeding, and he did not respond to her questions regarding whether anyone else was in the house. In the meantime, Officer Tomey continued to hear the sound of someone standing up and falling down "as if they were trying to get help and they weren't able to get it." Officer Tomey believed that the sound was coming from behind a sheet that she saw dividing two rooms. She then stepped inside the house and directed Hazelwood to sit down on the couch. Behind the sheet Officer Tomey found Jenkins "lying in a fetal position . . . bleeding profusely."

She announced that anyone else in the house should come out, and she heard a woman say, "I'm right here." She then saw Barnett and noticed a sawed-off shotgun lying on a bed. Officer Tomey then called an ambulance for Jenkins.

Barnett told Officer Tomey that the shotgun belonged to Jenkins, and the police later learned that Jenkins had several felony convictions. He was then arrested, but he moved to suppress the shotgun, arguing that it should be excluded because Officer Tomey entered his home without a warrant. The district court denied the motion, concluding that Officer Tomey did not need a warrant because the 911 call, the "standing up and falling down noise," the partially open door, and the presence of Hazelwood in a state of confusion amounted to exigent circumstances.

On appeal Jenkins contends that the district court erred in considering the presence of Hazelwood when denying the suppression motion because Hazelwood's presence was not known to Officer Tomey until after she had already begun her search by pushing open the front door. Jenkins also argues that exigent circumstances to justify the search did not exist when Officer Tomey pushed open the door.

Police generally need a warrant to enter a home, but "warrantless searches will be allowed when police have a reasonable belief that exigent circumstances require immediate action and there is no time to secure a warrant." *United States v. Lenoir*, 318 F.3d 725, 730 (7th Cir. 2003). One such circumstance is when the police "reasonably fear[ ] for the safety of someone inside the premises." *United States v. Richardson*, 208 F.3d 626, 629 (7th Cir. 2000). The safety of others is a particular concern when police respond to a report of a crime in progress, and, in such a situation, police judgments regarding warrantless

entries "should be afforded an extra degree of deference." *Reardon v. Wroan*, 811 F.2d 1025, 1029 (7th Cir. 1987). To justify a warrantless entry, the exigent circumstances must be known to the officers "at the time of the warrantless entry" and cannot be based on evidence discovered during the search. *United States v. Rivera*, 248 F.3d 677, 680-81 (7th Cir.), *cert. denied*, 534 U.S. 923 (2001); *accord United States v. Arch*, 7 F.3d 1300, 1304 (7th Cir. 1993).

The parties dispute whether the district court erred in considering Hazelwood's presence when it concluded that exigent circumstances justified Officer Tomey's entry. We need not decide that issue because, even excluding Hazelwood's presence, exigent circumstances justified the entry. Police received a 911 emergency call of an assault, possibly in progress. Such calls, by themselves, "can be enough to support warrantless searches under the exigent circumstances exception, particularly where . . . the caller identified himself." *Richardson*, 208 F.3d at 630; *accord United States v. Holloway*, 290 F.3d 1331, 1338-39 (11th Cir. 2002) (anonymous caller), *cert. denied*, 123 S. Ct. 966 (2003); *United States v. Cunningham*, 133 F.3d 1070, 1071-72 (8th Cir. 1998) (caller identified herself). *But see Kerman v. City of New York*, 261 F.3d 229, 235-36 (2d Cir. 2001) (warrantless search based on 911 call illegal because caller remained anonymous and police did not corroborate the information). Barnett identified herself when reporting the assault. Additionally, Officer Tomey found the front door open in the middle of the night and heard a noise from inside the house that sounded like a person standing up and falling down. Based on those circumstances, a reasonable officer would have feared for the safety of someone inside. Accordingly, because exigent circumstances justified Officer Tomey's entry, we uphold the district court's denial of Jenkins's motion to suppress.

AFFIRMED.

No. 02-4114                                              5

A true Copy:

    Teste:

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*