**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Robert A. COLLINS, Defendant–
Appellee.**

No. 03–3490.

United States Court of Appeals,
Seventh Circuit.

Argued April 13, 2004.

Decided Sept. 9, 2004.

Rehearing and Suggestion for Rehearing
En Banc Denied Oct. 7, 2004.

David E. Hollar, Office of the United States Attorney, Hammond, IN, for Plaintiff–Appellant.

H. Jay Stevens, Indiana Federal Community Defenders, Inc., South Bend, IN, for Defendant–Appellee.

Before FLAUM, Chief Judge, POSNER, and WILLIAMS, Circuit Judges.

**ORDER**

After police officers recovered five firearms from Robert Collins's apartment, he was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Collins then filed a motion to suppress the firearms, arguing that the officers unlawfully entered his home without a warrant. The district court granted Collins's motion. Because we find the officers were justified in entering Collins's apartment, we reverse the district court's order and remand for further proceedings.

## I. BACKGROUND

Not long after midnight, in the early morning hours of March 21, 2003, Wabash County, Indiana, Sheriff's Department Officers Jason Truman and Bryan Cox were conversing outside their patrol cars at a water treatment facility in Somerset, Indiana when they heard the sound of four or five gunshots. The officers believed the shots came from the western end of a small apartment complex located about 150 yards northwest of their location. They immediately headed to the complex to investigate. While en route, the officers reported the incident to their dispatcher, and the dispatcher informed the officers that the resident of Apartment 6 had just placed a 911 call reporting that shots had been fired within the same complex.

The complex consists of approximately sixteen single-story apartments. Apartments 6 and 7 are two of four adjoined apartments at the complex's western end. The officers arrived at the complex within thirty seconds of hearing the shots. (Mem. and Order at 1.) They did not see any persons in the parking lot, outside, or anywhere else in the area when they arrived. However, they heard extremely loud music coming from Apartment 7, Collins's apartment, and approached it. Deputy Cox knocked on Collins's partially opened door, and Collins eventually answered. When Deputy Cox asked Collins to lower his music, Collins responded with profanity. After another request that Collins lower his music, Collins "left his doorway and pushed Cox." Mem. and Order at 2. The officers then placed Collins under arrest for battery of a law enforcement officer. While effecting the arrest, Deputy Truman smelled alcohol on Collins's breath and the odor of burnt marijuana coming from inside his apartment and noticed that Collins's eyes were extremely bloodshot.

Collins was unarmed at the time of his arrest.

The officers then took Collins approximately sixty to seventy feet away from his apartment to a squad car. Collins attempted to kick Deputy Cox, so the officers bound Collins's feet in addition to handcuffing him. While bound and lying on the ground, he repeatedly stated that he wanted the restraints removed so he could carry out threats of violence against the officers. About three minutes after Collins's arrest, other officers arrived and guarded Collins while Deputies Cox and Truman entered Collins's apartment. Deputy Truman testified that the officers' reasons for entry included to determine whether there were any victims of the shooting that needed medical attention and to ascertain whether there were any other persons inside the apartment who might threaten officer safety.

Deputy Truman testified that the officers were inside the apartment no more than fifteen to twenty seconds. While inside, Deputy Truman observed a closed door with a light on behind it, opened this door into a utility closet, and saw four firearms. He also observed a firearm in the bathroom. As he was leaving, he also saw an open shoe box that appeared to contain marijuana on the kitchen stove. Deputy Truman testified that no drawers were opened or searched. No other persons were found. The officers subsequently applied for and received a warrant to seize the firearms and controlled substances from Collins's apartment, which they executed.

Collins testified that he had taken a considerable quantity of prescription medications that evening and that he had consumed alcoholic beverages prior to his arrest. He also testified that one of his neighbors had been in his apartment watching television on the evening in ques-

tion, but Collins was not sure at what point that evening the neighbor left.

The district court, deeming whether a search was justified under the circumstances an "extremely close" case, rejected the government's contention that the search was justified by the officers' explanation that they wanted to ensure no persons remained in Collins's apartment, concluded the protective sweep doctrine did not justify the search, and found that Collins did not consent to the search. It thus granted Collins's motion to suppress, stating, "While the officers may have been entitled to take a cursory glance throughout the apartment to look for victims or others posing a threat, they overstepped their authority by opening doors to discover the firearms." The government now appeals.

## II. ANALYSIS

On appeal, the government first argues that the officers' warrantless entry into Collins's apartment was justified by exigent circumstances. When reviewing an appeal from a district court's ruling on a motion to suppress, we review factual findings for clear error. *United States v. Fields*, 371 F.3d 910, 914 (7th Cir.2004). However, we give de novo review to mixed questions of law and fact, including whether exigent circumstances were present. *United States v. Richardson*, 208 F.3d 626, 629 (7th Cir.2000); *United States v. Mattison*, 153 F.3d 406, 410 (7th Cir.1998).

It is well-settled that a warrantless search or seizure of a person's home is presumptively unreasonable under the fourth amendment, absent exigent circumstances or certain other exceptions. *See Groh v. Ramirez*, 540 U.S. 551, 124 S.Ct. 1284, 1291, 157 L.Ed.2d 1068 (2004) (collecting cases). The exigent circumstances doctrine provides that a warrantless entry may be legal when there is compelling need for official action and no time to secure a warrant. *United States v. Salava*, 978 F.2d 320, 324 (7th Cir.1992) (citing *Michigan v. Tyler*, 436 U.S. 499, 509, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978)); *see also United States v. Jenkins*, 329 F.3d 579, 581 (7th Cir.2003). Examples of exigent circumstances that may justify a warrantless entry into a home include the hot pursuit of a fleeing felon, preventing the imminent destruction of evidence, preventing a suspect's escape, or addressing the risk of danger to police. *Minnesota v. Olson*, 495 U.S. 91, 1000, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). In addition, exigent circumstances justify a warrantless search where police officers "reasonably fear[ ] for the safety of someone inside the premises." *Jenkins*, 329 F.3d at 581 (7th Cir.2003) (citing *Richardson*, 208 F.3d at 629); *see also United States v. Brown*, 64 F.3d 1083, 1086 (7th Cir.1995); *United States v. Arch*, 7 F.3d 1300, 1303–05 (7th Cir.1993); *Salava*, 978 F.2d at 324–25 (7th Cir.1992). In such a situation, "[t]he need to protect or preserve life or avoid serious injury is justification for what would otherwise be illegal absent an exigency or emergency." *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (citing *Wayne v. United States*, 318 F.2d 205, 212 (D.C.Cir.1963) (opinion of Burger, J.)).

An officer's subjective belief that exigent circumstances are present is not sufficient to justify a warrantless search. *Richardson*, 208 F.3d at 629. Rather, "the test is objective: 'the government must establish that the circumstances as they appeared at the moment of entry would lead a reasonable, experienced law enforcement officer to believe that someone inside the house, apartment, or hotel room required immediate assistance.'" *Id.* (quoting *Arch*, 7 F.3d at 1304).

We agree with the district court that this is a very close case. Collins argues there was nothing to distinguish his apartment from the other fifteen in the complex as a possible source of the gunfire and that there was no objective information leading the officers to believe there might be someone in need of aid in Collins's apartment. However, when we consider all the facts known to these officers at the moment they entered Collins's apartment, we find that exigent circumstances justified the officers' entry in this case, as the officers reasonably believed that the safety of other persons may have been threatened. *See United States v. Hardy*, 52 F.3d 147, 149 (7th Cir.1995) (recognizing that exigent circumstances exist when police officers "reasonably believe that their safety or the safety of others may be threatened").

We have recognized before that calls to 911 reporting emergencies can help support a finding of exigent circumstances especially where, as here, the caller identified herself. *See Jenkins*, 329 F.3d at 581; *Richardson*, 208 F.3d at 626; *see also United States v. Holloway*, 290 F.3d 1331, 1338 (11th Cir.2002) (anonymous caller); *Tamez v. City of San Marcos*, 118 F.3d 1085, 1096 (5th Cir.1997). Here, not only was there a 911 call reporting that shots had been fired, but the officers themselves heard multiple gunshots that they believed came from the western part of the small apartment complex. Arriving less than a minute after hearing the shots, the officers found that the only sign of activity in the otherwise dormant complex was the "extremely loud music" emanating from Collins's apartment, an apartment at the complex's western end-consistent with where the officers had heard shots-and next door to that of the 911 caller.

Although the officers approached Collins's apartment believing that the music had been turned up after the gunshots, they did not let themselves into the unit at that point. Instead, they knocked and reasonably asked Collins to turn down his stereo that was blaring after midnight. His initial response to this request was profanity. What happened next we find to be significant: Collins proceeded to physically attack one of the police officers, pushing the officer after another request to turn down his music. And Collins continued to act aggressively, even after being handcuffed. He continually kicked at the officers; even after being bound at his hands and feet, he repeatedly demanded that his restraints be removed so that he could carry out physical acts of violence against the officers.

This unusually aggressive, belligerent behavior from the inhabitant of a location consistent with where the officers had heard multiple shots, next door to that of the 911 caller, and the source of blaring music that the officers believed had been turned up after the shots, as well as the smell of burnt marijuana, led the officers to reasonably fear that the safety of a person inside may have been threatened. *See Arch*, 7 F.3d at 1301–02 (finding that defendant's push of officer and "irrational, agitated, and bizarre" behavior contributed to officers' reasonable belief that injured person might be located in defendant's motel room). We have said before that "We do not think that the police must stand outside the apartment, despite legitimate concerns about the welfare of the occupant, unless they can hear screams." *Brown*, 64 F.3d at 1086. Moreover, although the officers did not see or hear anyone else when Collins opened his door, the officers testified they could not see into the apartment, and the blaring music could have drowned out any sounds or cries for help from possible victims. Waiting to obtain a warrant, or doing nothing, could have rendered meaningless any later at-

tempts to help a person who might have recently been shot. *See Jenkins,* 329 F.3d at 581 (stating the safety of others is "a particular concern when police respond to a report of a crime in progress, and in such a situation, police judgments regarding warrantless entries 'should be afforded an extra degree of deference.' ") (citation omitted). "An officer on the beat must be allowed to make snap judgments, subject to the requirement of reasonableness." *Brown,* 64 F.3d at 1086. While we recognize the importance of protecting the sanctity of the home, we find that in this case, considering the totality of the circumstances known to these officers when they made the decision to enter Collins's apartment only minutes after hearing gunshots, the officers reasonably feared for the safety of possible victims inside the residence. Exigent circumstances thus justified the officers' entry.

■ After the government establishes that exigent circumstances justified a warrantless entry into a residence, it must also demonstrate that "[t]he ensuing search ... was appropriately limited to the circumstances that justified it." *Salava,* 978 F.2d at 325. When it granted Collins's motion to suppress, the district court seemed to be less concerned about the officers' initial entry into the residence than with the scope of the officers' search once inside the apartment. It stated that although the officers may have been entitled to take a cursory glance throughout the apartment to look for victims or others posing a threat, they went too far by opening doors to discover firearms. Collins, however, does not contest the scope of the officers' search.

Indeed, when an officer is searching for possible injured persons, the search must be limited to those places where an injured person might be found. *Arch,* 7 F.3d at 1304. Here, Deputy Truman opened a closed door with a light on behind it and found four weapons in a utility closet; Deputy Truman testified he did not know the door opened into a utility closet before he opened it. Officers also found a gun in a bathroom. Behind closed doors such as these and inside a bathroom constitute places where an injured person might be found. *See id.* (noting that bathroom is place where injured victim might be found). The officers did not open drawers or cabinets, and they testified that the search lasted no more than fifteen to twenty seconds. *Cf. United States v. Richards,* 937 F.2d 1287, 1292 (7th Cir.1991) (finding scope reasonable where officers did not search through drawers or "dawdle in each room looking for clues"). Therefore, the scope of this search was reasonable.

In light of our ruling that exigent circumstances supported the officers' warrantless entry into Collins's apartment, we need not address the government's alternative argument that the officers were justified in entering the residence to conduct a protective sweep. *See Arch,* 7 F.3d at 1303.

## III. CONCLUSION

We find that under the facts of this case, exigent circumstances supported the officers' warrantless entry into Collins's apartment. We thus REVERSE the district court's order and REMAND for further proceedings consistent with this opinion.