# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 04-4330

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

PAYTON BLACKWELL,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. IP 04-98-CR B/F—**Sarah Evans Barker**, *Judge*.

_____

ARGUED JULY 5, 2005—DECIDED JULY 26, 2005

_____

Before BAUER, POSNER, and EASTERBROOK, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. When the police arrived, warrant in hand, to arrest Payton Blackwell for domestic battery, they found him just outside his home, puttering with the lock to a door. While one officer put the handcuffs on Blackwell, another saw a head appear in the doorframe. That led officer Billy Murphy to approach the open door; he smelled marijuana while still outside and on entering Blackwell's office (the room just inside the door) he found Anton Hawkins and asked him to step outside, where he

could be watched. Murphy called for a team of drug special-
ists in light of what he had smelled and the bag of mari-
juana he had seen in Blackwell's office. Agent Jason
Tortorici also entered the office and saw what appeared to
be a rifle. (It turned out to be an air gun.) Tortorici asked
Blackwell whether any other weapons were in the house;
Blackwell replied that he had a handgun. That was a
prudent question, as it turned out that two more persons
were in the house, and the officers (still waiting for the
arrival of the drug squad) were at risk. Cf. *New York v.
Quarles*, 467 U.S. 649 (1984). All four of the house's occu-
pants soon were assembled outdoors. Blackwell consented
to a search, and the officers found three handguns rather
than one. Blackwell pleaded guilty to a felon-in-possession
charge, see 18 U.S.C. §922(g)(1), preserving an opportunity
to appeal the district court's denial of his motion to sup-
press the weapons. See Fed. R. Crim. P. 11(a)(2).

The parties' appellate briefs debate whether it was
reasonable for Murphy to enter the office. The prosecutor
argues, and the district court found, that the entry was
reasonable as a "protective sweep" to reduce risks of vio-
lence, because Hawkins and any other occupants may have
been armed. See *Maryland v. Buie*, 494 U.S. 325 (1990) (a
protective sweep of adjacent rooms is reasonable when
officers enter a house to make a search or arrest);
*United States v. Arch*, 7 F.3d 1300, 1303 (7th Cir. 1993)
(protective sweeps may be reasonable when an arrest is
made immediately outside a house). Blackwell counters that
Murphy entered to search for drugs rather than armed and
dangerous occupants, observing that Murphy did not draw
his own weapon or look beyond the office, even though
persons other than Hawkins may have been inside (as they
turned out to be) and a quest for safety should have led
Murphy to look in every room.

Why didn't the officers protect themselves by trundling
Blackwell into a paddy wagon and departing? Even if the

answer is "because the smell of marijuana justified further investigation," a search for drugs, unlike a self-protective look-see, requires consent or a warrant, neither of which Murphy had. This is an interesting dispute, and, though its fact-specific nature counsels accepting the district judge's resolution, see *United States v. Burrows*, 48 F.3d 1011, 1017-18 (7th Cir. 1995), we need not enter the fray. The prosecution did not seek to introduce the marijuana Murphy found, any evidence derived from the marijuana, or the air rifle Tortorici observed. What Blackwell wanted the district judge to suppress was the firearms, which would have come to light inevitably. The exclusionary rule does not apply to evidence that is sure to be located through lawful procedures. See, e.g., *Nix v. Williams*, 467 U.S. 431 (1984); *Segura v. United States*, 468 U.S. 796 (1984); *Murray v. United States*, 487 U.S. 533 (1988). Suppression of such evidence would be a windfall for the accused. When a violation of the fourth amendment occurs but is not essential to the causal sequence, the remedy is damages (for invasion of privacy) rather than immunity for one's crimes.

Let us suppose that neither Murphy nor Tortorici had entered the office. Nothing material would have changed. Murphy smelled marijuana while outside, where he had every right to be. The smell gave probable cause to believe that a crime was ongoing inside the house. See *Johnson v. United States*, 333 U.S. 10, 13 (1948). Murphy did not have to see a bag of marijuana to know that the house contained marijuana; what else could account for the smell? The visual confirmation gained from Murphy's entry into the office therefore was not important. Knowledge that the house contained contraband led Murphy to call the drug squad. If Blackwell did not consent to a search, then a warrant lay in store, and the guns would have turned up.

Blackwell's speculation that his girlfriend or another of the house's occupants might have been able to hide the guns while the officers waited for a warrant is unavailing.

Spoliation of evidence would be yet another crime, and a suspect cannot use the possibility of a new offense as a reason why discovery would not have occurred. See *Segura*, 468 U.S. at 816. Anyway, the police acted lawfully in keeping all four occupants of the house where they could see them (and where they could not reach any weapons) until the search had been conducted; such a safety precaution is reasonable under the fourth amendment. So the propriety of Murphy's entry into the office does not matter (not to the exclusionary rule, anyway), and the judgment is

AFFIRMED.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*