**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Payton BLACKWELL, Defendant–Appellant.**

No. 04–4330.

United States Court of Appeals, Seventh Circuit.

Argued July 5, 2005.

Decided July 26, 2005.

Rehearing and Rehearing En Banc Denied Aug. 15, 2005.

Timothy M. Morrison (argued), Office of the United States Attorney, Indianapolis, IN, for Plaintiff–Appellee.

James C. McKinley (argued), Indiana Federal Community Defenders, Inc., Indianapolis, IN, for Defendant–Appellant.

Before BAUER, POSNER, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

When the police arrived, warrant in hand, to arrest Payton Blackwell for domestic battery, they found him just outside his home, puttering with the lock to a door. While one officer put the handcuffs on Blackwell, another saw a head appear in the doorframe. That led officer Billy Murphy to approach the open door; he smelled marijuana while still outside and on entering Blackwell's office (the room just inside the door) he found Anton Hawkins and asked him to step outside, where he could be watched. Murphy called for a team of drug specialists in light of what he had smelled and the bag of marijuana he had seen in Blackwell's office. Agent Jason Tortorici also entered the office and saw what appeared to be a rifle. (It turned out to be an air gun.) Tortorici asked Blackwell whether any other weapons were in the house; Blackwell replied that he had a handgun. That was a prudent question, as it turned out that two more persons were in the house, and the officers (still waiting for the arrival of the drug squad) were at risk. Cf. *New York v. Quarles*, 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984). All four of the house's occupants soon were assembled outdoors. Blackwell consented to a search, and the officers found three handguns rather than one. Blackwell pleaded guilty to a felon-in-possession charge, see 18 U.S.C. § 922(g)(1), preserving an opportunity to appeal the district court's denial of his motion to suppress the weapons. See Fed.R.Crim.P. 11(a)(2).

■ The parties' appellate briefs debate whether it was reasonable for Murphy to enter the office. The prosecutor argues, and the district court found, that the entry was reasonable as a "protective sweep" to reduce risks of violence, because Hawkins and any other occupants may have been armed. See *Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990) (a protective sweep of adjacent rooms is reasonable when officers enter a house to make a search or arrest); *United States v. Arch*, 7 F.3d 1300, 1303 (7th Cir.1993) (protective sweeps may be reasonable when an arrest is made immediately outside a house). Blackwell counters that

Murphy entered to search for drugs rather than armed and dangerous occupants, observing that Murphy did not draw his own weapon or look beyond the office, even though persons other than Hawkins may have been inside (as they turned out to be) and a quest for safety should have led Murphy to look in every room.

■ Why didn't the officers protect themselves by trundling Blackwell into a paddy wagon and departing? Even if the answer is "because the smell of marijuana justified further investigation," a search for drugs, unlike a self-protective look-see, requires consent or a warrant, neither of which Murphy had. This is an interesting dispute, and, though its fact-specific nature counsels accepting the district judge's resolution, see *United States v. Burrows*, 48 F.3d 1011, 1017–18 (7th Cir.1995), we need not enter the fray. The prosecution did not seek to introduce the marijuana Murphy found, any evidence derived from the marijuana, or the air rifle Tortorici observed. What Blackwell wanted the district judge to suppress was the firearms, which would have come to light inevitably. The exclusionary rule does not apply to evidence that is sure to be located through lawful procedures. See, e.g., *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); *Segura v. United States*, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984); *Murray v. United States*, 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988). Suppression of such evidence would be a windfall for the accused. When a violation of the fourth amendment occurs but is not essential to the causal sequence, the remedy is damages (for invasion of privacy) rather than immunity for one's crimes.

Let us suppose that neither Murphy nor Tortorici had entered the office. Nothing material would have changed. Murphy smelled marijuana while outside, where he had every right to be. The smell gave probable cause to believe that a crime was ongoing inside the house. See *Johnson v. United States*, 333 U.S. 10, 13, 68 S.Ct. 367, 92 L.Ed. 436 (1948). Murphy did not have to see a bag of marijuana to know that the house contained marijuana; what else could account for the smell? The visual confirmation gained from Murphy's entry into the office therefore was not important. Knowledge that the house contained contraband led Murphy to call the drug squad. If Blackwell did not consent to a search, then a warrant lay in store, and the guns would have turned up.

Blackwell's speculation that his girlfriend or another of the house's occupants might have been able to hide the guns while the officers waited for a warrant is unavailing. Spoliation of evidence would be yet another crime, and a suspect cannot use the possibility of a new offense as a reason why discovery would not have occurred. See *Segura*, 468 U.S. at 816, 104 S.Ct. 3380. Anyway, the police acted lawfully in keeping all four occupants of the house where they could see them (and where they could not reach any weapons) until the search had been conducted; such a safety precaution is reasonable under the fourth amendment. So the propriety of Murphy's entry into the office does not matter (not to the exclusionary rule, anyway), and the judgment is

AFFIRMED.