UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 28, 2006
Decided May 8, 2006

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. FRANK H. EASTERBROOK, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 05-3434

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>     *Plaintiff-Appellee,* <br><br>      *v.* <br><br> TERRY N. TAYLOR, <br>     *Defendant-Appellant.* | Appeal from the United States District Court for the Northern District of Illinois, Western Division. <br><br> No. 04 CR 50038 <br><br> Philip G. Reinhard, <br> *Judge.* |

**O R D E R**

Defendant-Appellant Terry Taylor was convicted of violating 18 U.S.C. § 922(g), for being a felon in possession of a firearm, and 28 U.S.C. § 5861(d), for unlawfully possessing a firearm that was not registered to him in the National Firearms Registration and Transfer Record. Taylor appeals the district court's denial of his pre-trial suppression motion and his sentencing as an "armed career criminal," pursuant to 18 U.S.C. § 924(e)(1). For the reasons discussed below, we affirm the judgment of the district court.

## I. BACKGROUND

On March 8, 2004, at approximately 3:00 a.m., a 911 caller[1] reported hearing gun shots coming from a house at 415 N. Central Avenue in Rockford, Illinois. Rockford police officers Ty Eagleson and Michael Schissel were dispatched to that address, the home of Ressie Taylor, who is defendant-appellant Terry Taylor's mother. When the officers arrived, they saw Terry Taylor walking out of the front door of the house. The officers patted him down, finding nothing, and then locked him in the police squad car. During Taylor's pat-down, Officer Eagleson observed a spent shotgun casing on the ground near the front porch of the home. Officer Eagleson spoke with Taylor's mother in the living room of the home, and she told him that she had been awakened by a loud boom that she thought was a gun shot. She also told Officer Eagleson that after waking, she saw Taylor standing in her living room. After speaking with Taylor's mother, Officer Eagleson walked around the exterior of the home, where he found a live shotgun casing and another spent shotgun casing.

At that point, Terry Taylor's brother, Otis Taylor, and his nephew, Stephen Neely, arrived at the home. Otis Taylor told Officer Eagleson that Terry Taylor, Neely, and he had been at a club that night and that he had just dropped his brother off at his mother's home. Shortly after leaving defendant Taylor at his mother's home, Otis Taylor said, his mother had called him and told him that defendant Taylor had shot a gun in the house. Mr. Neely confirmed to Officer Eagleson that Otis Taylor had received this call from Ressie Taylor and mentioned that defendant Taylor had pointed a shotgun at him while he was sitting in the kitchen of Ressie Taylor's home the previous evening.

Officer Eagleson then reentered the Taylor home and asked Taylor's mother for permission to search the home. The district court credited the testimony of the police officers that she consented to the search, finding her later testimony to the contrary not credible. In the ensuing search, an officer found an empty box of shotgun shells, but no gun. While the interior search was being conducted, Officer Schissell, using his flashlight, discovered a sawed-off shotgun on the roof of the Taylor home. Officer Schissel also found another live shotgun casing in the back of the squad car where Taylor had been sitting.

Taylor was charged with unlawfully possessing a firearm as a convicted felon and unlawfully possessing a sawed-off shotgun not registered with the National Firearms Registration and Transfer Record. Taylor moved to suppress the physical

---

[1] Appellant Taylor claims that the officers did not know the identity of the caller, who he claims was actually his brother. The State claims that the caller identified herself as Ressie Taylor, Taylor's mother. For the purposes of this appeal, we assume that the identity of the caller was unknown.

evidence against him but the district court denied this motion, finding that the warrantless search of the premises was justified by exigent circumstances. The district court also found that, even absent such exigent circumstances, the warrantless search was valid because Taylor's mother had consented to the search of her home for a weapon.

At trial, a jury convicted Taylor of both charges. At the sentencing hearing, the district court determined that Taylor was an armed career criminal as defined by 18 U.S.C. § 924(e)(1). This provision mandates that a person convicted of possessing a firearm as a convicted felon who has three previous violent felony convictions shall be imprisoned for not less than fifteen years. Specifically, the district court found that Taylor qualified for sentencing as an armed career criminal because he had two armed robbery convictions and one conviction for theft from a person. The district court sentenced Taylor to concurrent terms of 300 months' imprisonment for possession of a firearm as a felon and 120 months' imprisonment for possession of an unregistered sawed-off shotgun. Taylor now appeals.

## II. ANALYSIS

### A.    Motion to Suppress

Taylor argues that the district court erred in denying his suppression motion because exigent circumstances did not justify the warrantless search of his mother's home and because there was no consent to the search. This court reviews findings of historical fact and credibility determinations for clear error, *United States v. Johnson*, 170 F.3d 708, 713 (7th Cir. 1999), and reviews mixed questions of law and fact, including whether exigent circumstances existed, de novo. *United States v. Richardson*, 208 F.3d 626, 629 (7th Cir. 2000).

The test for whether exigent circumstances existed is objective. *Richardson*, 208 F.3d at 629. To justify a warrantless search, "the government must establish that the circumstances as they appeared at the moment of entry would lead a reasonable, experienced law enforcement officer to believe that someone inside the house, apartment, or hotel room required immediate assistance." *United States v. Arch*, 7 F.3d 1300, 1304 (7th Cir. 1993). This court has held that "911 calls reporting an emergency can be enough to support warrantless searches under the exigent circumstances exception, particularly where . . . the caller identifie[s] himself." *Richardson*, 208 F.3d at 630. In *Richardson*, police received a 911 call reporting a rape and murder. Although the caller stated that the crimes were already complete, this court concluded that exigent circumstances still existed to justify a search of the crime scene identified by the caller because the police had a reasonable basis for believing there was a continuing danger. *See id.* at 631 (noting police testimony that the caller might have mistaken as dead a person who was still alive). Likewise, in

*United States v. Jenkins*, 329 F.3d 579, 582 (7th Cir. 2003), this court held that exigent circumstances justified an officer's search when the police received a 911 call regarding an assault and the police officer heard suspicious noises from inside the search premises. The circumstances in *Richardson* and *Jenkins* gave rise to the police's reasonable fear for the safety of someone inside the premises, and thus justified warrantless searches.

In the instant case, the 911 dispatcher told police that gun shots had been reported in the Taylor home. When the officers arrived they observed Taylor leaving the home and found spent and live shotgun casings on the property. The police spoke to Taylor's brother and nephew, who provided additional information regarding defendant's possession of a firearm. Since no gun had been recovered, police did not know if someone inside the home had access to the gun, or whether there might be injured persons inside the home. A police officer confronting this situation could reasonably believe that a threat of violence existed. Therefore, it was reasonable for the officers to check the home to ensure that no one posed a threat to them or anyone else.

Taylor objects that the 911 call could not create exigent circumstances because the caller did not identify himself. While we have stated that a caller who identifies himself is particularly credible, *see Richardson*, 208 F.3d at 630, unidentified 911 callers may also provide information contributing to the police's reasonable belief that exigent circumstances exist. Here, the information given to the 911 dispatcher was confirmed by Taylor's mother upon police's arrival at the home. The initial ambiguity of the caller's identity does not undermine the police's reasonable conclusion that a threat of danger existed.

Taylor also objects that the circumstances police confronted at his home are distinguishable from the exigent circumstances existing in *Richardson* and *Jenkins* because the situation at his home was more stable than those the police encountered in those cases. Specifically, Taylor claims that because he, the suspect, was sequestered in a police squad car and police had not encountered any other violent activity, any exigency that may have existed had dissipated before the search of the home. Taylor's argument, however, benefits from too much hindsight. When the police detained Taylor in their car, they had not found the gun, and they did not know if he was the person who had fired shots. Taylor did not admit his guilt to the police, so the officers could have reasonably believed that the gunman was still inside the home. As discussed above, the police also needed to ascertain whether any victims were present inside the home. The threat of a remaining gunman and the fear of remaining victims justified the police's further searching of the Taylor home even after Taylor was in custody. The district court therefore correctly denied Richardson's suppression motion because the warrantless search fell within the exigent circumstances exception to the warrant requirement.

Moreover, we note that even if the search of the Taylor home was not justified by exigent circumstances, it was justified by Ressie Taylor's consent. Voluntary consent to a search is an exception to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). It is undisputed that Taylor's mother owned the house at 415 N. Central Avenue and had authority to consent to the search of her home. At the suppression hearing, Officers Eagleson and Schissel testified that Taylor's mother consented to a search of the home for the gun. She testified that she did not consent. The district court, weighing her credibility against that of the officers, concluded that she consented to the search. While Taylor maintains that no consent was given, he does not point to any factors that would undermine the district court's finding. The district court's credibility assessment is accorded substantial deference and will only be disturbed if exceedingly improbable testimony is credited. *United States v. Cardona-Rivera*, 904 F.2d 1149, 1152 (7th Cir. 1990); *see also United States v. Thornton*, 197 F.3d 241, 247 (7th Cir. 1999) ("In a swearing contest, the trial judge's choice of whom to believe will not be rejected unless the judge credited exceedingly improbable testimony."). Such a showing of improbability has not been made here, and thus the district court's denial of the suppression motion is affirmed.

**B.      Taylor's Sentencing as an Armed Career Criminal**

The second issue presented in this appeal is whether the district court properly determined that Taylor was an armed career criminal under 18 U.S.C. § 924(e)(1). The armed career criminal provision of Section 924 requires a fifteen-year minimum prison sentence for anyone convicted under Section 922(g) of unlawfully possessing a firearm as a convicted felon who has three prior "violent felony" or "serious drug offense" convictions. *See* 18 U.S.C. § 924(e)(1). According to Section 924(e)(2)(B), "violent felony" means any crime punishable by imprisonment for a term exceeding one year that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B).

It is undisputed that Taylor has three prior convictions: two for armed robbery and one for theft from a person. The two armed robberies are unquestionably "violent felonies" under Section 924(e)(1), but Taylor argues that his Illinois conviction for "theft from a person" does not fall within the statutory definition of a violent felony. Taylor's argument rests primarily on a document filed by the State's Attorney regarding that conviction which indicated that no violence was used in

Taylor's theft. The government argues that this document is irrelevant because it was filed six days after the defendant's guilty plea and thus was not part of the trial judge's factual findings. The relevant portion of this document recounted the facts of the case and stated: "The defendant handed [the cashier] some money and when she opened the cash drawer the defendant took the cash drawer and he and the other man left the business. [The cashier] was not threatened or hurt in any way."

In determining that the theft charge was a "violent felony" as defined by 18 U.S.C. § 924(e)(1), the district court looked to the charging document, the statutory elements of the offense, and a transcript of the plea colloquy. The district court did not consider the statement made by the State's Attorney after the defendant pled guilty to the theft charge.

This court has previously concluded that theft from a person constitutes a violent felony under Section 924. *See United States v. Howze*, 343 F.3d 919 (7th Cir. 2003). In *Howze*, the defendant had three prior convictions, one of which was for "theft from a person" under Minnesota law.[2] In *Howze*, we described the manner in which a court should determine whether a crime is classified as a violent felony for the purposes of the armed career criminal determination. Citing *Taylor v. United States*, 495 U.S. 575 (1990), we stated:

> first, that classification depends on the nature of the offense as defined in the criminal code rather than either the label the state applies or the specific acts the defendant committed, and second, that the best way to determine which offenses count as "burglary" for the purposes of federal law is to determine which offenses pose risks that force will be used.

*Howze*, 343 F.3d at 921. Following this framework, we first examined the theft from a person statute in question. We then noted that "[w]hat theft from a person has in common with generic burglary is that both entail a risk that violence will erupt between the thief and the victim." *Id.* at 923. We also noted that thefts from persons create "the potential not only for violence but also for injury caused by the act of taking." *Id.* at 924. On the basis of this reasoning, we concluded that theft from a person is a violent felony under 18 U.S.C. § 924. *Id.* at 924 (overruling *United States v. Lee*, 22 F.3d 736 (7th Cir. 1994)).

Taylor argues only that the situation in this case can be distinguished from that in *Howze* because the document filed by the State's Attorney describes the acts underlying Taylor's theft conviction as nonviolent. However, the Supreme Court recently cautioned that any inquiry beyond the statute and charging document in determining what constitutes a "violent felony" must be narrowly restricted to

---

[2] There is no relevant distinction between the Minnesota statute under which the defendant in *Howze* was convicted and the Illinois statute at issue here. *See* Minn. Stat. § 609.52(3)(3)(d)(1); 720 Ill. Comp. Stat. 5/16-1(b)(4)) (2005). Taylor has not argued that there is a distinction.

implement the objective of the statute and avoid evidentiary disputes. *Shepard v. United States*, 544 U.S. 13, 125 S. Ct. 1254, 1261 n. 4 (2005). This court recently discussed the Supreme Court's ruling in *Shepard* and observed that sentencing courts should not look to police reports or complaint applications in assessing whether particular crimes implicate the Armed Career Criminal Act. *See United States v. McGee*, 408 F.3d 966, 988 (7th Cir. 2005). We held that later courts considering whether crimes constitute violent felonies are "generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Id.* (quoting *Shepard*, 125 S. Ct. at 1257). The document that Taylor claims the district court should have considered is not within the scope of documents that may be considered, and was never considered by the state trial judge or the defendant when he pled guilty to theft from a person. Thus, the district court was correct not to consider it in the assessment of whether Taylor had committed three prior "violent felonies."

Taylor finally argues that the Sixth Amendment required the district court to submit the question of whether Taylor was an armed career criminal to the jury, citing *United States v. Booker*, 543 U.S. 220 (2005). However, *Booker* stated that "[a]ny fact (*other than a prior conviction*) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 543 U.S. at 244 (emphasis added). Furthermore, Taylor's argument has been specifically rejected by this court. In *United States v. Sperberg*, 432 F.3d 706, 707 (7th Cir. 2005), we held that prior convictions are an exception to the rule that juries determine all facts that affect maximum available punishments, and specifically concluded that a defendant's status as an armed career criminal need not be submitted to a jury. The district court appropriately determined Taylor's armed career criminal status, and we reject Taylor's Sixth Amendment argument.

## III. CONCLUSION

The judgment of the district court is AFFIRMED.