In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-1238

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

EDGARDO GONZALEZ, JR.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:07-cr-00082-JPS-1—**J.P. Stadtmueller**, *Judge.*

ARGUED DECEMBER 1, 2008—DECIDED FEBRUARY 9, 2009

Before BAUER, ROVNER, and EVANS, *Circuit Judges.*

BAUER, *Circuit Judge.* As a result of a controlled buy, Detective Britt Kohnert, Sergeant Steven Hermann and two other officers of the Milwaukee Police Department (collectively "officers") arrested Edgardo Gonzalez, Jr. (Edgardo). Edgardo informed the officers that he lived directly adjacent to where he was arrested. The officers, all in plain clothes, went to the single family home to conduct a narcotics investigation. After knocking on the front door and receiving no answer, the officers knocked

on the back door, and were let in by Edgardo's sister, Iris Gonzalez. The officers informed Iris that they had Edgardo in custody and were there to conduct a narcotics-related investigation. The officers asked Iris if Edgardo lived in the house and she stated that he did. The officers then asked Iris if they could speak with her; she agreed and let them in the house. Inside the home, Jesusa Gonzalez, Edgardo's mother, confirmed that Edgardo lived there and did not pay rent. The officers asked both women for permission to look for further narcotics. Both women consented and were very cooperative with the officers.

The officers then asked if the women would show them Edgardo's bedroom. The women agreed and led the officers to the bedroom, where the officers detected a strong odor of marijuana. On her own initiative, Iris opened the unlocked, accordion-style doors, peered into the bedroom and stated "enough said," indicating to the officers that she knew why they were there.

Standing just outside the bedroom, the officers saw: (1) a large, clear plastic bag on the bed containing several individually wrapped packages of marijuana; (2) a scale next to the marijuana; (3) a Nike shoe box adjacent to the marijuana and scale; and (4) another scale, located on a dresser, topped with crack cocaine.

The officers entered the room to secure the contraband viewed in plain sight. Sergeant Hermann used his flashlight to look through the manufactured holes in the shoe box and saw what appeared to be further contraband in plastic bags. He then opened the shoe box and

found crack cocaine, marijuana and a scale. Without disturbing the contents, the officer closed the box and later re-opened it to show Edgardo's mother and sister.

After securing the evidence found, excluding the shoe box, the officers conferred for 15-20 minutes and decided to secure a warrant to search the entire room. Detective Kohnert's affidavit used to support the warrant application did not include any information about the shoe box or its contents; the affidavit included only information regarding: (1) Edgardo's arrest and the fact that he provided his address; (2) the authority to enter and search given by Iris and Jesusa; (3) the scale and large bag of marijuana found in plain view on the bed; and (4) the scale with crack cocaine found in plain view on the dresser.

The warrant was issued and executed. The officers seized the shoe box and the contraband found inside. They also discovered four loaded firearms and further drug trafficking contraband.

In his post-arrest statement, Edgardo admitted that all the items seized were his.

The grand jury charged Edgardo with four counts: (1) possession with intent to distribute 50 grams or more of cocaine base, a violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A); (2) possession with intent to distribute marijuana, a violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D); (3) possession of four firearms in furtherance of drug-trafficking crimes, a violation of 18 U.S.C. § 924(c)(1)(A)(I); and (4) possession of firearms as a felon, a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

Edgardo moved to suppress the physical evidence found in his bedroom and his post-arrest statement. The district court denied the motion to suppress; it held that the officers were lawfully in Edgardo's residence and bedroom based on Iris's and Jesusa's apparent authority to consent, and that the evidence found on the dresser and on the bed (excluding the shoe box) was in plain view. The district court held that Iris and Jesusa did not have the apparent authority to consent to the search of the shoe box, the bags of contraband inside the container were not in plain view, and opening the box was unlawful. The district court then held that the contents of the shoe box were admissible under the independent source doctrine.

Edgardo entered a conditional plea of guilty on counts (1) and (4), while reserving his right to appeal the denial of the motion to suppress. The district court sentenced Edgardo to 68 months' imprisonment. This timely appeal followed only as to the applicability of the independent source doctrine.

## DISCUSSION

On appeal, Edgardo argues that the search warrant was improper because the decision to procure the warrant was influenced by the unlawful observation of the shoe box's contents. Edgardo argues that the evidence was not seized through an independent and legal search.

When reviewing a district court's denial of a motion to suppress, we examine the district court's factual deter-

minations for clear error and review questions of law de novo. *United States v. Brown*, 133 F.3d 993, 998 (7th Cir. 1998).

The proper way to balance society's interest in deterring police misconduct and society's interest in having juries receive all probative evidence of a crime is to place police in the same, not a worse, position they would have been, absent the misconduct. *Murray v. United States*, 487 U.S. 533, 542 (1988) (citing *Nix v. Williams*, 467 U.S. 431, 443 (1984)). Excluding evidence that the police ultimately obtained by independent legal means would not put the police in the same position they would have been in absent any illegal conduct; instead, it would put them in a worse position. *Id*. The independent source doctrine avoids this by allowing evidence initially discovered during an unlawful search if the evidence was discovered later through a source untainted by the initial illegality. *Id.*; *United States v. Markling*, 7 F.3d 1309, 1315 (7th Cir. 1993). The key to determining whether the independent source doctrine applies, therefore, is to ask whether the evidence at issue was obtained by independent legal means. *United States v. May*, 214 F.3d 900, 906 (7th Cir. 2000).

In determining whether evidence was obtained from an independent source, this court employs a two-part test. *Markling*, 7 F.3d at 1315. "The first question is whether the illegally obtained evidence affected the magistrate's decision to issue the search warrant." *Id*. (citing *Murray*, 487 U.S. at 542). The second part of this test asks whether the decision to seek the warrant was prompted

by information gained from the initial illegal activity. *Id.* at 1315-16 (citing *Murray*, 487 U.S. at 542).

Edgardo only argues that the illegal look into the shoe box prompted the decision to seek a warrant. He argues that the facts, which include an illegal search and then a 15-20 minute discussion that resulted in a decision to seek a warrant, coupled with its reasonable inferences, establish that "but for" the illegal search, the officers would not have sought a warrant. We disagree and find that both factors of the independent source doctrine have been met.

First, the magistrate judge's decision to issue the search warrant was not influenced by the illegal observation of the shoe box's contents. The affidavit in support of the search warrant made no mention of any evidence found in the container. The affidavit only included the evidence lawfully observed in plain view, which was the marijuana and scale on the bed and the crack cocaine and scale found on the dresser. Therefore, we agree with the district court that in issuing the warrant, the judge was not influenced by evidence acquired by the illegal search.

Second, although the timing of the events could be read to establish a casual link between the illegal look into the shoe box and the decision to seek the warrant, it was not clear error, based on the record before us, for the district court to find that the officers would have sought a warrant had the box not been opened. The affidavit already reflected sufficient, legally acquired, evidence of probable cause. Also, Sergeant Herrmann testified

that the decision to procure a warrant was prompted to determine whether proper authority to consent to the search existed. Sergeant Herrmann testified that the officers decided that the safest way to preserve the investigation was to obtain a warrant. Therefore, we hold that the district court did not clearly error in its determination that the decision to seek a search warrant was not prompted by any evidence unlawfully observed. The rulings and sentence of the district court are AFFIRMED.