In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1738

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOHN E. SCHMIDT, JR.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:11-cr-00153-LA-1—**Lynn Adelman**, *Judge.*

ARGUED SEPTEMBER 14, 2012—DECIDED NOVEMBER 6, 2012

Before POSNER, ROVNER, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* In May 2011, several Milwaukee police officers were investigating a series of gunshots that were heard near the intersection of South 10th Street and West Orchard Street. About an hour into the investigation, some of the officers learned that one person had been shot in the leg near that inter-section and was recovering at a hospital. At around 1:00 a.m., an officer approached a backyard shared by

two duplexes on 1420 South 10th Street and noticed bullet holes and a trail of about nine spent casings in the area, including five casings right next to one of the duplexes and a casing in the yard itself. Without a warrant, he entered the backyard and approached a corner of the yard, where he found and seized a rifle, which belonged to John E. Schmidt, Jr. Schmidt was subsequently indicted for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). After the district court denied his motion to suppress, Schmidt pled guilty and was sentenced to 21 months' imprisonment. As permitted by his plea agreement, Schmidt now appeals the denial of his suppression motion, arguing that the backyard was curtilage and that any danger had dissipated by the time of the search given the heavy presence of officers in the neighborhood and the passage of a few hours' time. However, we find that a reasonable officer could have believed that there were other exigent circumstances, i.e., wounded victims in the backyard in need of emergency aid, and so the officer's warrantless presence in the backyard was justified even if the backyard were curtilage. And because the scope and breech of the rifle were in plain view once he was there, we find that the officer did not violate the Fourth Amendment in seizing the rifle. Therefore, we affirm Schmidt's conviction.

## I. BACKGROUND

On May 30, 2011, at around 10:30 p.m., two Milwaukee police officers responding to a call heard a series of gun-

shots in or around the intersection of South 10th Street and West Orchard Street in Milwaukee, Wisconsin. Over a dozen officers arrived in the neighborhood to investigate and interview witnesses, and within an hour some had learned that a person had been shot in the leg near that intersection and was in the hospital. The officers remained in the neighborhood until about 4 a.m.

Schmidt lived near the intersection in a duplex at 1420/1422 South 10th Street, which shared a backyard with another duplex whose address was listed as 1424/1426 South 10th Street. The 1420/1422 duplex abuts South 10th Street, while the 1424/1426 duplex is a bit farther back, abutting a back alley running parallel to South 10th Street. The front and back of this two-duplex plot were almost entirely enclosed by chain-link fences with "No Trespassing" signs on them, along with chain-link gates, though a small corner of the yard was blocked by a wooden fence on the South 10th Street side.

At approximately 1:00 a.m., one of the investigating officers approached the two-duplex complex from the back alley. He noticed bullet holes in a car parked on a concrete slab adjacent to the backyard and bullet holes in the 1424/1426 duplex itself. He also noticed a trail of about nine spent casings on the ground, including five casings right next to the 1424/1426 duplex and one casing within the yard. The chain-link gate on the back alley side was open that night, and the officer, without a warrant, entered the backyard and panned the area with his flashlight. He got to the corner of the yard

that was blocked from the South 10th Street side by the wooden fence and saw, amidst some tall grass, a small pile of assorted objects, which included an old bicycle, wood, a blue Tupperware lid, a garden hose, and some trash.

Shining his flashlight towards the corner, the officer saw a glint of metal and approached the pile. Without moving any objects, the officer saw the scope and breech of a firearm, and the blue Tupperware lid covering the stock of the firearm. He initially believed the firearm to be a pellet gun or BB gun because a "large bore rifle with a scope [would] just [be] out of place in the area." The officer then lifted the Tupperware lid, pushed some tall grass aside, and saw that the firearm was a .308 Winchester rifle, which he seized.

The rifle belonged to Schmidt, who was charged with being a felon in possession of a firearm. Schmidt filed a motion to suppress, and after conducting an evidentiary hearing, the magistrate judge found that while the backyard was curtilage, Schmidt did not have a reasonable expectation of privacy there. He recommended to the district court denial of the motion, and that court adopted that recommendation and denied the motion. Schmidt pled guilty pursuant to a conditional plea agreement which reserved his right to challenge the denial of the suppression motion on appeal, and he was sentenced to 21 months' imprisonment. Schmidt now appeals the denial of his suppression motion.

## II. ANALYSIS

The parties agree that after *United States v. Jones*, ___ U.S. ___, 132 S. Ct. 945 (2012), which postdated the district court's denial of Schmidt's suppression motion, the government's warrantless trespass onto curtilage is presumptively a Fourth Amendment violation even if there is no reasonable expectation of privacy there. *See id.* at 952. So the parties have vigorously disputed whether the shared backyard is considered curtilage, *see id.* at 953, and, if it is not curtilage, whether Schmidt had a reasonable expectation of privacy in that area. *See United States v. Villegas*, 495 F.3d 761, 767 (7th Cir. 2007). We need not resolve these questions, however, because even if the shared backyard is entitled to the same Fourth Amendment protections applicable to a home, the officer's warrantless entry into the backyard was justified by exigent circumstances, and his seizure of the rifle was justified by the fact that its scope and breech were in plain view.

### A.  Exigent Circumstances Justified the Officer's Warrantless Backyard Entry

Warrantless searches of areas entitled to Fourth Amendment protection are presumptively unreasonable, but the government may overcome this presumption by demonstrating that, from the perspective of the officer at the scene, a reasonable officer could believe that exigent circumstances existed and that there was no time to obtain a warrant. *See United States v. Huddleston*,

593 F.3d 596, 600 (7th Cir. 2010). Exigent circumstances exist, for example, when officers must "'render emergency assistance to an injured [person] or to protect a [person] from imminent injury.'" *Kentucky v. King*, ___ U.S. ___, 131 S. Ct. 1849, 1856 (2011) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). In reviewing the district court's denial of a motion to suppress, we review factual findings for clear error and issues of law de novo, and whether exigent circumstances existed is a mixed question of fact and law that is reviewed de novo. *See Huddleston*, 593 F.3d at 600.

At the time of the search, gunshots had recently been heard in the neighborhood. Bullet holes were in a car that was adjacent to the backyard, bullet holes were in the 1424/1426 duplex itself, and there was a trail of about nine spent casings on the ground nearby, including five right next to the 1424/1426 duplex and one in the yard. These circumstances, taken together, made it reasonable for an officer to believe, at the time of the search, that people in the backyard area may have recently been shot and in need of immediate aid.

Schmidt principally argues that by the time of the search, two hours had already passed since the shots were fired and over 20 officers had blanketed the block. But the prime exigency in this case was the potential for wounded victims, not necessarily the threat of further shooting. If a victim had been shot in the yard, as a reasonable officer could have suspected, that victim would not have become any less wounded after two hours had passed; to the contrary, he would

need immediate aid. It would not have made sense for an officer to wait for a warrant when a shooting victim could have been dying in the yard, and the officer also did not need to know that someone had actually been shot in order to go into the yard.* *See United States v. Brown*, 64 F.3d 1083, 1086 (7th Cir. 1995) (it is unreasonable to think "that the police must stand outside [the] apartment, despite legitimate concerns about the welfare of the occupant, unless they can hear screams"). Schmidt emphasizes that the officer also intended to look for evidence, but we do not look at the subjective motivations of an officer when examining the objective basis for a finding of exigent circumstances. *See Brigham City v. Stuart*, 547 U.S. 398, 404 (2006) ("An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively*, justify [the] action.'" (citation omitted)). We therefore conclude that the officer's warrantless entry into the backyard was justified by exigent circumstances.

### B.  The Scope and Breech of the Rifle Were in Plain View

Schmidt argues that even if exigent circumstances existed, the officer's combing through the small pile of

---

* Though other officers had discovered at this point that a person near the intersection had been shot in the leg, the officer testified that he was unaware of this fact when he searched the backyard.

assorted objects was not justified by the need to look for wounded victims, since a wounded victim could not possibly have been among the small pile of objects or underneath a Tupperware lid. *See Mincey v. Arizona*, 437 U.S. 385, 393 (1978) (search "must be strictly circumscribed by the exigencies which justify its initiation" (citation and quotation marks omitted)); *United States v. Arch*, 7 F.3d 1300, 1304 (7th Cir. 1993) (after showing exigent circumstances, the government "must also demonstrate that '[t]he ensuing search . . . was appropriately limited to the circumstances that justified it'" (quoting *United States v. Salava*, 978 F.2d 320, 325 (7th Cir. 1992))); *see, e.g.*, *id.* (analyzing whether search for wounded victims was "appropriately limited to those places where an injured person might have been found").

However, we find that the officer's seizure of the rifle is justified for another reason: the fact that the scope and breech of the rifle were in plain view. A warrantless seizure of an object is justified if: "(1) the officer was lawfully present in the place from where he viewed the item, (2) the item was in plain view, and (3) its incriminating nature was 'immediately apparent.'" *United States v. Cellitti*, 387 F.3d 618, 623 (7th Cir. 2004). "For the incriminating nature to be immediately apparent, the officer must have probable cause to believe that the item is contraband or otherwise linked to criminal activity." *Id.* at 624.

As discussed earlier, the officer was lawfully present in the backyard due to objective indications of exigent

circumstances. *See Arizona v. Hicks*, 480 U.S. 321, 326 (1987) (officer may seize evidence in plain view even if justification for his warrantless presence is exigent circumstances (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971))). The scope and breech of a firearm were in plain view. And based on the recent shots that were heard, the bullet holes, and the trail of spent casings leading into the backyard, the officer had probable cause to believe that the firearm to which the scope and breech belonged was linked to the gunshots that had just occurred in the area. *See Cellitti*, 387 F.3d at 624 ("officers may have probable cause to seize an ordinarily innocuous object when the context of an investigation casts that item in a suspicious light"); *see, e.g.*, *United States v. Van Dreel*, 155 F.3d 902, 905 (7th Cir. 1998) ("[a]lthough guns and ammunition may be lawfully possessed, in the context of [the crimes of] bank robbery and hunting out of season, these items assume an incriminating nature"). Schmidt appears to argue that the officer did not know it was a gun until he moved the Tupperware lid and the grass, but that is not what the officer said, and Schmidt did not challenge the officer's credibility. The officer testified that the scope and breech of a firearm were visible before any objects were moved, and so the fact that a gun was there was apparent before the officer moved anything around. *Compare, e.g.*, *Gentry v. Sevier*, 597 F.3d 838, 849 (7th Cir. 2010) (incriminating evidence in a pile of items in a wheelbarrow was not plainly visible without moving the items on top of the pile).

To be sure, the officer testified that he initially thought that the gun was a pellet gun or BB gun, but that was

only based on his passing incredulity that a large bore rifle would actually be sitting out there in the yard. He did not say that the scope and breech that were in plain view could not belong to some dangerous weapon. Pellet guns and BB guns look remarkably like real firearms. We do not think that when something that looks like a gun is in plain view after gunshots had been heard nearby, an officer lacks probable cause to believe that the gun is linked to the gunshots simply because it might end up being a pellet gun or BB gun.

For instance, in *United States v. Willis*, 37 F.3d 313 (7th Cir. 1994), we found that an officer was justified in seizing a gun in a school zone even though it was partially hidden and the officer was only "able to discern [a] metallic glint [that] came from the exposed barrel of a gun." *Id.* at 316. The exposed barrel could have been of a pellet gun or BB gun, but that mere possibility did not vitiate probable cause. Where in *Willis* the plainly visible barrel of a firearm was sufficient to justify seizure of the gun, here, the plainly visible scope and breech of a firearm were sufficient to justify seizure of the rifle. This case is not like *United States v. Brown*, 79 F.3d 1499 (7th Cir. 1996), where the only thing that was in plain view was a "shiny, chrome object." *Id.* at 1509. There, we found that the incriminating nature of that object was not so apparent that the officer was justified in seizing what turned out to be a gun. "Thinking a metal object might be a weapon does not meet the standard for plain view," *id.*, but seeing the actual scope and breech of a firearm does. Because the gunshots had been heard nearby, seizure of the rifle was

justified even if only its scope and breech were in plain view.

## III. CONCLUSION

For the above-stated reasons, we AFFIRM Schmidt's conviction.