In the

# United States Court of Appeals

## For the Seventh Circuit

No. 24-1100

JOHNNIE E. RUSSELL,

*Plaintiff-Appellant,*

*v.*

RYAN COMSTOCK, COLIN POWELL, and
DAVE WOHLGEMUTH,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 21-cr-00151-JPS — **J. P. Stadtmueller**, *Judge.*

ARGUED SEPTEMBER 19, 2024 — DECIDED FEBRUARY 24, 2026

Before ROVNER, HAMILTON, and KIRSCH, *Circuit Judges.*

ROVNER, *Circuit Judge.* Johnnie Russell brought an action under 42 U.S.C. § 1983 alleging that police officers of the Racine Police Department violated his Fourth Amendment rights in the search of his apartment and vehicle. The defendants sought summary judgment on the merits and on the ground of qualified immunity. The district court granted summary judgment on the merits in favor of the defendants.

Russell has appealed solely as to the grant of summary judgment in favor of defendant Colin Powell regarding the warrantless search of his apartment.

In reviewing this appeal of the summary judgment determination, we consider solely the undisputed facts as set forth by the parties in the district court below and those set forth in Russell's brief on appeal. On June 25, 2020, at approximately 1:10 p.m., Racine Police Department Officers were dispatched to 1915 Washington Avenue, Racine, Wisconsin, for an assault complaint. Officer Coca, who arrived at around 1:15 p.m., encountered Willie Cannon outside the building and learned that he had been stabbed in the chest. Cannon identified Johnnie Russell as the person who stabbed him. The officers also learned that both Cannon and Russell lived in the apartment building at 1915 Washington, with Cannon in apartment 103 and Russell in apartment 202. Cannon was transported to Ascension hospital.

Investigator Jody Spiegelhoff, Officer Colin Powell, and Sergent Ryan Comstock arrived on scene around 2:30 pm, and met with the building manager, Johnny Marvitz, who stated that Russell parked his two vehicles along the east side of the building. One of those vehicles was not presently there. Marvitz further indicated that Russell lived in apartment 202 and that he was uncertain if Russell had gone back to his apartment.

As Russell notes in his brief, prior to the sweep of Russell's apartment, Spiegelhoff told the other officers that he would be seeking a warrant for apartment 202, but that the apartment still needed to be secured to "make sure he's not in there, make sure he's not hurt or anything." Property manager Jerome Howe offered to let them into the apartment, and

on the way up to the apartment Marvitz again confirmed with the police what was to occur, stating "person-to-person welfare check, I mean, we all understand each other here." Howe then unlocked the door to the apartment, and Powell conducted the search that lasted only 37 seconds. Around the same time, Spiegelhoff and Comstock secured Cannon's apartment by doing a sweep to ensure there was no one inside who was injured related to the case. No persons were found in either apartment at that time. The officers subsequently obtained a search warrant for Russell's apartment, and conducted a thorough search of the apartment later that day pursuant to that warrant.

Russell challenges only the 37-second-long search of his apartment. He does not challenge the thorough search conducted hours later pursuant to the warrant, and does not contend that anything seen in the earlier search contributed to the warrant, nor does he challenge the granting of the search warrant itself. When asked at oral argument what damages he could have as a result of that cursory sweep given his failure to challenge the extensive search that followed, his counsel pointed only to the potential for nominal damages and damages for emotional distress.

At the very core of the Fourth Amendment is the right for a person to retreat into their own home and be free in that home from unreasonable government intrusion. *Payton v. New York*, 445 U.S. 573, 589–90 (1980). Warrantless searches and seizures within a home are presumptively unreasonable, but "this presumption may be overcome in some circumstances because the ultimate touchstone of the Fourth Amendment is reasonableness." (internal quotation marks omitted) *Kentucky v. King*, 563 U.S. 452, 459 (2011).

Accordingly, the warrant requirement is subject to certain exceptions where the exigencies create a compelling need to act and no time to secure a warrant, such as situations involving hot pursuit of a fleeing suspect, the need to prevent the imminent destruction of evidence, or the need to protect an occupant from imminent injury or to render emergency aid. *Id.* at 459–60; *United States v. Starnes*, 741 F.3d 804, 807 (7th Cir. 2013).

In seeking summary judgment below, Powell contended that the quick search of Russell's apartment was a reasonable search under the Fourth Amendment in order to protect against any danger posed to officers or other persons in the hallway outside the apartment, and in order to locate any persons who might be injured within the apartment. Furthermore, Powell argued that even if the search was unconstitutional, he possessed qualified immunity for his actions. In granting summary judgment, the district court held that the pre-warrant sweep of Russell's apartment constituted a protective sweep that was reasonable under the Fourth Amendment. Although characterizing it as a close case, the court concluded that Powell could reasonably believe that a protective sweep of the residence was necessary because: (1) the offense at issue was a serious one involving violence; (2) Russell's whereabouts were unknown at the time of the search; (3) Russell's residence was left unattended after the stabbing; (4) a third, unknown person was visiting at the time of the stabbing, and he was unaccounted for; and (5) the search was limited in scope to the search for a person presenting a danger or who was injured, lasting only 37 seconds. Dist. Ct. Order of 12/14/23 at 8–9.

Russell appealed that determination to this court. We review a grant of summary judgment *de novo*, and can affirm a district court's decision on any ground that finds support in the record as long as the parties had a fair opportunity to present their arguments and evidence. *Lexington Ins. Co. v. RLI Ins. Co.*, 949 F.3d 1015, 1025 n.6 (7th Cir. 2020). On appeal, Russell again contends that the search was unconstitutional and that Powell lacked qualified immunity.

We begin with the question of qualified immunity. The doctrine of qualified immunity "'balances … the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Wood v. Moss*, 572 U.S. 744, 758 (2014), quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Accordingly, in civil claims such as this one under § 1983 for money damages, government officials are shielded from personal liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation marks omitted). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Id.*, quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012). Existing precedent must have placed the statutory or constitutional question beyond debate in order for a right to be clearly established. *Id.* at 12. Furthermore, the Supreme Court has repeatedly admonished that the inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition,'" and that "[s]uch specificity is especially important in the Fourth Amendment context, where the Court has recognized that '[i]t is sometimes difficult for an

officer to determine how the relevant legal doctrine … will apply to the factual situation the officer confronts.'' *Id.*, quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) and *Saucier v. Katz*, 533 U.S. 194, 205 (2001); see also *Sabo v. Erickson*, 128 F.4th 836, 844 (7th Cir. 2025) (en banc).

Where such cases do not clearly settle the right with sufficient specificity to provide officials with fair notice that their conduct violates that right, the court can proceed to dismiss the case on that ground without ever proceeding to the merits of the constitutional challenge. *Camreta v. Greene*, 563 U.S. 692, 705 (2011); *Pearson*, 555 U.S. at 236. In fact, the Supreme Court has recognized that "our usual adjudicatory rules suggest that a court *should* forbear resolving this [constitutional] issue. After all, a 'longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.'" *Camreta*, 563 U.S. at 705 (emphasis in original), quoting *Lyng v. Northwest Indian Cemetery Protective Assn.*, 485 U.S. 439, 445 (1988).

In allowing the courts discretion as to the matter, the Court recognized numerous circumstances in which district courts and courts of appeals might choose to address the qualified immunity issue and forgo discussing the constitutional claim on the merits. For instance, where "it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right," the Court opined that given scarce judicial resources, district courts and courts of appeals might be understandably unenthusiastic about engaging in an analysis of the claim on the merits in what would seem to be an essentially academic exercise. *Pearson*, 555 U.S. at 237. Similarly, *Pearson* recognized courts might be reluctant to address the underlying merits in "cases in which the

constitutional question is so factbound that the decision provides little guidance for future cases." *Id*. at 237.

The choice, in short, is left to the district courts and courts of appeals as to whether to proceed in the first instance to the qualified immunity claim. Here, for some of the same reasons described in *Pearson*, we conclude that it would be preferable to proceed directly to the qualified immunity analysis, and we consider only whether it was clearly established law that the officers could not conduct such a limited search to ensure there were no injured persons in the apartment. We need not consider the alternative claim that Powell had qualified immunity because it was not clearly established that a sweep based on the safety concerns of the officers was unreasonable, which in the circumstances presented in this case is a weaker argument.

Qualified immunity is an affirmative defense, but once asserted as it was here, the burden shifts to the plaintiff to defeat it. *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019). In order to meet that burden, the plaintiff must "show either a reasonably analogous case that has both articulated the right at issue and applied it to a factual circumstance similar to the one at hand or that the violation was so obvious that a reasonable person necessarily would have recognized it as a violation of the law." *Id*. (internal quotation marks omitted). Russell does not identify any reasonably analogous caselaw that would have alerted a reasonable officer in Powell's position that a sweep of the apartment in those circumstances would be unreasonable under the Fourth Amendment. At most, Russell produces cases discussing the limits of a protective sweep, but never addresses other relevant Fourth Amendment jurisprudence relevant to emergency aid situations. The question in

countering the defense of qualified immunity here is not only whether one exception to the warrant requirement was applicable, but whether caselaw established that the search in this case was unreasonable under the Fourth Amendment under any exceptions to the warrant requirement. *Id.* at 702. Russell has not identified precedent—and we have found none—that would have placed the constitutional issue beyond debate. *Stewardson v. Titus*, 126 F.4th 1264, 1276 (7th Cir. 2025); *Taylor v. Schwarzhuber*, 132 F.4th 480, 487 (7th Cir. 2025).

Existing precedent does not establish beyond debate that the sweep of the residence in this case was unreasonable under the Fourth Amendment because cases involving analogous circumstances have repeatedly held that such a search for injured persons can be constitutionally reasonable, and Russell has identified no case to the contrary. As we discussed, the challenged search here involved a sweep of the apartment, lasting approximately 37 seconds, to ensure that no persons who were injured or who presented a danger were in the apartment. The district court and the parties focus on the law regarding protective sweeps in assessing Fourth Amendment reasonableness, but we addressed a similar argument in *United States v. Arch*, 7 F.3d 1300 (7th Cir. 1993), and held that the more relevant analysis for determining whether the search was reasonable under the Fourth Amendment in such circumstances was that of the exigent circumstances doctrine.

In *Arch*, after arresting Arch in the lobby of a motel, the officers subsequently entered and conducted a sweep of his motel room to ensure that no injured persons were in the room. *Id.* at 1302. As in this case, the parties argued whether the search was reasonable under the protective sweep

doctrine, which recognizes an exception to the warrant requirement for a protective sweep accompanying an in-home arrest. Under the protective sweep analysis, officers lawfully present in the home may conduct a limited search of the premises if there are "'articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.'" *Arch*, 7 F.3d at 1303, quoting *Maryland v. Buie*, 494 U.S. 325, 334 (1990). We held that whether that exception extends to searches for potentially injured persons was a question of first impression, but that we did not need to address that issue because the propriety of a warrantless entry in such circumstances was already recognized under the exigent circumstances exception to the warrant requirement. Because the officers reasonably believed that an injured person might be inside the motel room, we held that the search was constitutional under that exception.

The Supreme Court in *Brigham City v. Stuart*, 547 U.S. 398 (2006), reinforced that the reasonableness of a warrantless search for an injured person should be analyzed under the exigent circumstances exception. The Court recognized that searches inside a home are presumptively unreasonable under the Fourth Amendment, but that the ultimate touchstone is reasonableness, and the warrant requirement is subject to exceptions where "the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Id*. at 403 (internal quotation marks omitted); *Mincey v. Arizona*, 437 U.S. 385, 394 (1978). "One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury." *Brigham*

*City*, 547 U.S. at 403. As the Court has repeatedly held, "police may make warrantless entries onto premises if they reasonably believe a person is in need of immediate aid and may make prompt warrantless searches of a homicide scene for possible other victims or a killer on the premises." *Flippo v. W. Virginia*, 528 U.S. 11, 14 (1999); *Mincey*, 437 U.S. at 392; *Brigham City*, 547 U.S. at 403.[1] As we did in *Arch*, we therefore address the challenge to the reasonableness under the Fourth Amendment of the search for potentially injured persons under the exigent circumstances exception.

The question, then, is whether a reasonable officer in Powell's position would have understood that a warrantless search of Russell's apartment in these circumstances violated the Fourth Amendment. That standard is not met, because numerous cases have recognized that it is reasonable to search for other potential victims when addressing a violent altercation of this kind. Powell would have no reason to know that the facts in this case materially differed from that established precedent such as to render the search unreasonable in light of the exigent circumstances exception.

The only information as to the nature of the altercation in this case was provided by the victim, Cannon. He was bleeding from a wound to his chest, and after he was transported to the hospital the officers were informed that he had suffered a stab wound. The attack occurred in the apartment building in which both Russell and Cannon had apartments, and

---

[1] Although our qualified immunity analysis necessarily focuses solely on the law at the time of the search, see *Pearson*, 555 U.S. at 244, we note that the Supreme Court recently, in *Case v. Montana*, 146 S. Ct. 500, 508 (2026), reaffirmed the standard set forth in *Brigham City*, 547 U.S. at 400.

Cannon was outside the building when first encountered by the officers. No other witnesses to the violent altercation were identified or interviewed at the scene. Finally, the officers received mixed messages as to Russell's whereabouts. At one time, they were told that he had departed, and they confirmed that one of his two cars was missing from the spot in which he parked. But according to the undisputed facts submitted by the parties, they were also told that he could have gone back to his apartment.

The officers were engaged in the investigative process, and certainly were not required to believe without question the version of events told to them by Cannon. Given Cannon's injury, it was clear to the officers that a violent conflict had occurred, but they had only Cannon's word that Russell was the aggressor in that attack. Until that statement was corroborated, it would be reasonable for officers to seek to ascertain whether Russell was also injured in the violent incident.

As numerous cases have made clear, the officers do not need certainty that an injured person is in the home in order for the exigent circumstances exception to apply. For instance, in *Michigan v. Fisher*, 558 U.S. 45, 45–46 (2009), the officers observed, outside a residence, a pickup truck in the driveway with its front smashed, damaged fence posts, three broken house windows, and blood on the hood of the pickup, on clothes inside it, and on one of the doors to the house. They observed Jeremy Fisher inside the house, screaming and throwing things. *Id*. at 46. He refused to answer their knock, and they noticed a cut on his hand and asked if he needed medical attention. *Id*. He responded with profanity and told them to get a search warrant. *Id*. Although the trial and appellate courts had held that the entry into the house violated the

Fourth Amendment, the Supreme Court reversed, holding that the officers' entry was reasonable under a straightforward application of the emergency aid exception of the Fourth Amendment. *Id*. at 48. The Court held that it would be objectively reasonable to believe that his projectiles "might have a human target (perhaps a spouse or a child), or that Fisher would hurt himself in the course of his rage." *Id*. at 48. In so holding, the Court rejected the arguments that the blood could be explained by the cut on his hand and that Fisher was apparently able to meet his own needs. The Court held that "[o]fficers do not need ironclad proof of 'a likely serious life-threatening' injury to invoke the emergency aid exception." *Id*. at 49. The Court noted that it would not meet the needs of law enforcement or the demands of public safety to require officers to walk away in those circumstances. *Id*. And the possibility that no one in fact was in need of medical assistance did not alter that analysis. As the Court held, "[o]nly when an apparent threat has become an actual harm can officers rule out innocuous explanations for ominous circumstances." *Id*. "It sufficed to invoke the emergency aid exception that Fisher had hurt himself (albeit nonfatally) and needed treatment that in his rage he was unable to provide, or that Fisher was about to hurt, or had already hurt, someone else." *Id*. As *Fisher* thus makes clear, even where the officers could not identify with precision the third person in danger of injury, or point to a potentially fatal injury, the emergency aid exception to the warrant requirement can be met.

Other cases have similarly recognized that an officer need only have an objectively reasonable basis to believe that someone might be injured and in need of medical aid. For instance, in *United States v. Schmidt*, 700 F.3d 934, 937–38 (7th Cir. 2012), we upheld a search of a backyard under the emergency aid

exception to the warrant requirement where at the time of the search gunshots had been heard in the neighborhood and bullet holes were in a car adjacent to the backyard and in the duplex itself, and bullet casings were found on the ground in the area. We held that under those circumstances taken as a whole, an officer could reasonably believe at the time of the search that people in the backyard might have been shot and in need of immediate aid. *Id*. at 938. As we will explore later, the search was upheld on that basis even though approximately two hours had passed since the shots were fired, and even though no specific potential victim was identified. *Id*. We emphasized that the officer does not need knowledge that someone has actually been shot in order to go into the yard. *Id*. In so holding, we cited to the conclusion in *United States v. Brown*, 64 F.3d 1083, 1086 (7th Cir. 1995) that "it is unreasonable to think 'that the police must stand outside [the] apartment, despite legitimate concerns about the welfare of the occupant, unless they can hear screams.'" *Id*.; see also *United States v. Maxwell*, 85 F.4th 1243, 1247–48 (7th Cir. 2023) (upholding search where a neighbor called 911, there was no sound from within the apartment, and the officers saw two bullet holes in the door near the deadbolt and shell casings outside the door, because an officer could reasonably believe that someone inside the apartment could be injured by the bullets that went through the door). As those cases recognize, officers can only act on the information before them, and the evidence that a person may be in need of immediate assistance need only be reasonable, not definitive.

Russell counters that the other information known to the officers rendered unreasonable any conclusion that Russell was in the apartment and was injured. First, Russell argues that the officers had been informed that Russell left the

building, and therefore could not possibly have reason to believe that he, or anyone else, was in his apartment and injured. That argument, however, is problematic both factually and legally. As a factual matter, the parties' Joint Statement of Material Facts for Summary Judgment ("Undisputed Facts") reveals that the officers were given conflicting information as to Russell's whereabouts. It includes the statement that dispatch had informed the officers that an assault was in progress on the scene at 1915 Washington Avenue, and that the potential suspect had a knife and may have gone back upstairs to his apartment. It further states that the building manager, Johnny Marvitz, stated that Russell lives in Apartment 202 and he was uncertain if Russell had gone back to his apartment. Therefore, the officers had reason to believe that Russell might be in his apartment.

And as a legal matter, we have held in other cases that the possibility of another alternative does not render unreasonable the belief that he was in need of medical assistance in his apartment. We addressed such a circumstance in *Gaetjens v. City of Love Park*, 4 F.4th 487 (7th Cir. 2021). In that case, a doctor contacted Sally Gaetjens's emergency contact, Rosalie Eads, when unable to locate Gaetjens after instructing her to go to the hospital based upon her high blood pressure. *Id*. at 490. Eads got no response when knocking on Gaetjens door, and the next day called the Loves Park police and told them that Gaetjens might be experiencing a medical emergency. The officers could not see anyone inside Gaetjens's Loves Park home, but noticed a full mailbox and packages on the porch. *Id*. Eads informed the officers that she thought perhaps Gaetjens was at Gaetjens's other home in Rockford. *Id*. The officers nevertheless entered the Loves Park home without a warrant, and we upheld the search under the emergency aid

exception. Gaetjens argued that Eads had told the officers that she believed Gaetjens was at the Rockford home, but we held that the statement "just gave [Sergeant] Allton a reason to also look for Eads in her Rockford house; it in no way contradicted the above facts that gave Allton an objectively reasonable basis to enter the Loves Park home." *Id*. at 493.

In *Gaetjens*, then, we recognized that if officers have a reasonable basis to believe that the person in need of emergency aid is at that location, they can enter to search for that person even if they have conflicting information that the person may be at a different location. The potential for an alternative scenario does not itself render the search unreasonable. Officers in a fluid situation such as the ones presented in these cases must be able to simultaneously explore conflicting theories, and their actions can be reasonable even if the other scenario is ultimately determined to be the correct one. Given that precedent upholding searches in such circumstances, we cannot hold that the possibility that Russell was in his car instead of his apartment would alert a reasonable officer in Powell's position that an emergency aid sweep of the apartment was unreasonable under the Fourth Amendment.

Russell next asserts that the officers lacked any nexus between his apartment and the reasons that they went in. That argument fails for the same reasons stated above. The officers had received information that Russell might have returned to his apartment, and the injury to Cannon indicated a violent altercation and the extent and nature of that violence was not clear. Given the evidence that there had been a stabbing and that one person involved in that violence was absent and had not been heard from, Powell had reason in light of our

caselaw to believe that it was objectively reasonable to fear that Russell might be injured.

Finally, Russell contends that the emergency aid exception does not apply here, because the delay between the officers' arrival at the scene and their search of the apartment belied any claim of exigency. They argue that the first officer arrived on the scene at 1:15pm, and that the search was not conducted until over an hour later, at around 2:43 pm. Officer Powell, who conducted the search of Russell's apartment, arrived on the scene at around 2:31 pm, and Officer Spiegelhoff, who conducted the search of Cannon's apartment, arrived at about 2:40 pm. Russell contends that the delay of an hour and a half between the first arrival and the warrantless search renders the search unreasonable because it makes clear that the officers could have obtained a warrant prior to the search.

In order for Russell to succeed on this basis and defeat the claim of qualified immunity, any reasonable officer would have known that the passage of time itself defeats the exigency and renders the emergency aid exception inapplicable and the search, accordingly, unreasonable. But we have repeatedly upheld searches under the emergency aid exception involving significant time delays, including, for instance, delays of nine hours, *Sutterfield v. City of Milwaukee*, 751 F.3d 542, 562 (7th Cir. 2014), two hours, *Schmidt*, 700 F.3d at 938, and one hour and fifteen minutes, *United States v. Salava*, 978 F.2d 320, 325 (7th Cir. 1992). In those cases, we held that the urgent need to provided medical aid as quickly as possible did not dissipate with the passage of time, rendering warrantless entry reasonable.

For instance, in *Schmidt*, we noted that the exigency in emergency aid situations was the potential for a wounded

victim, not the threat of further shooting, and that "the victim would not have become any less wounded after two hours had passed; to the contrary, he would need immediate aid." *Schmidt*, 700 F.3d at 938. We held that even though two hours had passed during which a warrant presumably could have been obtained, at the point of the search "[i]t would not have made sense for an officer to wait for a warrant when a shooting victim could have been dying in the yard, and the officer also did not need to know that someone had actually been shot in order to go into the yard." *Id*. Similarly, in *Sutterfield*, we held that "although we agree … that emergencies do not last forever, it would be folly for us to try to declare *ex ante* some arbitrary cut-off that would apply to all emergency aid cases." *Sutterfield*, 751 F.3d at 562. Given our cases recognizing that the passage of time does not necessarily render a warrantless search unreasonable where officers reasonably could believe that a person in the area to be searched was in need of immediate medical aid, it would not have been clear to Powell that the passage of time would render the search unreasonable here.

Finally, in assessing the reasonableness of a warrantless search under the emergency aid exception, we consider also whether the scope of the search was reasonable in light of the exigency. Here, the parties do not contest the reasonableness of the scope of the search. The search of Powell's apartment lasted for only 37 seconds, a time consistent with a search limited to the identification of injured persons in need of medical aid. Accordingly, nothing in the nature of the sweep of the apartment would alert a reasonable officer that the search would violate the Fourth Amendment.

Given the undisputed facts in this case, therefore, Powell is entitled to qualified immunity as to the search of Russell's apartment in this case, and is entitled to summary judgment on that ground. On that basis, the grant of summary judgment in favor of defendant Colin Powell is AFFIRMED.

HAMILTON, *Circuit Judge*, concurring in the judgment. I am troubled by the defense theory that supposedly exigent circumstances justified a warrantless entry well over an hour after the first officer arrived on the scene, especially in the absence of any more specific information about an immediate and ongoing threat to anyone's safety. See *United States v. Delgado*, 701 F.3d 1161, 1164–65 (7th Cir. 2012) (suppressing evidence found in warrantless search: "The mere fact that the shooter was generally at large is not enough for a reasonable officer to specifically believe that he was in the apartment."). Nevertheless, Judge Rovner's careful opinion for the court explains persuasively why plaintiff Russell has failed to defeat Officer Powell's defense of qualified immunity. Powell and the other officers had to make decisions in the face of conflicting and unreliable information about a violent crime with the chief suspect on the loose. Moreover, the 37-second intrusion into Russell's apartment caused him no discernible harm. I agree we should affirm the judgment of the district court.